# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### September 11, 2018 Session

## IN RE MARNEASHA D. ET AL.[1]

### Appeal from the Juvenile Court for Shelby County
### No. CC6419          Harold W. Horne, Special Judge

_____

### No. W2017-02240-COA-R3-PT
_____

This is a termination of parental rights case involving the parental rights of two fathers to their respective children who were born to the same mother.[1]  On March 21, 2017, the Tennessee Department of Children's Services ("DCS") and the children's guardian *ad litem* jointly filed a petition to terminate the parental rights of the children's mother and the two fathers.  Following a bench trial, the trial court terminated the parents' parental rights to the children on multiple statutory grounds and upon a determination that termination of their parental rights was in the best interest of the children.  Because we are unable to ascertain whether the trial court's judgment is an independent judgment of the trial court, we vacate the trial court's judgment and remand for sufficient findings of facts and conclusions of law in compliance with Tennessee Code Annotated § 36-1-113(k) (2017).

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

John R. McCabe, Memphis, Tennessee, for the appellants, Lamarcus G. and Dedrick B.[2]

---

[1] The trial court also terminated the mother's parental rights to the children.  The mother did not appeal the decision of the trial court and is not participating in this appeal.  We will therefore confine our analysis to those facts relevant to the fathers.

[2] Following the hearing in this matter but prior to oral arguments before this Court, Mr. McCabe accepted new employment, which led to the State of Tennessee becoming one of his clients.  Mr. McCabe filed a motion with this Court suggesting a conflict of interest may have arisen.  During oral arguments, the attorney for the State of Tennessee Department of Children's Services waived any conflict of interest that may exist in this matter.

Herbert H. Slatery, III, Attorney General and Reporter, and Jordan K. Crews, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

Taylor R. Oyaas, Memphis, Tennessee, Guardian Ad Litem.

## OPINION

### I. Factual Background and Procedural History

The four children at issue in this appeal are Joshua B., Devunta D., D'Anna D., and Marneasha D. Dedrick B. was listed as Joshua's father on the child's birth certificate. No father was listed on the birth certificates of the other children. However, the mother of the children, Ieasha D. ("Mother"), had provided "a sworn statement or other credible and reliable statement" that Dedrick B. was the biological father of Devunta and D'Anna and that Lamarcus G. was the biological father of Marneasha. Dedrick B. testified that he had undergone a DNA test that had proven he was the father of Devunta and D'Anna. According to the trial court, Dedrick B. had known since the DNA test in September 2015 that Devunta and D'Anna were his biological children, but he had not filed a petition to establish paternity. Lamarcus G. filed a petition to establish paternity of Marneasha on October 13, 2014. Although paternity had not been established when the termination petition was filed in March 2017, Lamarcus G. was subsequently established by court order as Marneasha's father on May 12, 2017.

The Shelby County Juvenile Court ("trial court") removed Devunta and Joshua from Mother's custody and placed them into DCS custody on January 23, 2015. The trial court found these children to be dependent and neglected on June 19, 2015, and placed the other two children, D'Anna and Marneasha, into DCS custody at that time upon a finding that those children were also dependent and neglected. The trial court found by clear and convincing evidence that Joshua and Devunta had been physically abused and that D'Anna and Marneasha had been the victims of environmental neglect. The trial court also determined that Mother had severely abused Devunta and Joshua because she had failed to protect them from physical abuse.

During the dependency and neglect proceedings, the trial court appointed attorney Taylor R. Oyaas as a guardian *ad litem* ("GAL") to represent all four children during that action as well as any subsequently filed termination proceedings. DCS and the GAL filed a petition on March 21, 2017, seeking to terminate the parental rights of Mother, Lamarcus G., and Dedrick B. concerning their respective children. The trial court conducted a trial during two nonconsecutive days on September 14, 2017, and September 28, 2017.

At the conclusion of trial, the trial court orally announced its ruling that it found clear and convincing evidence to terminate both fathers' parental rights to their respective children. Subsequently, the trial court entered an order terminating Dedrick B.'s parental rights to Devunta D., Joshua B., and D'Anna D. after finding by clear and convincing evidence the existence of the following statutory grounds for termination of his parental rights: (1) abandonment by willful failure to visit the children, (2) abandonment by willful failure to support the children, and (3) substantial noncompliance with the permanency plans. The trial court found an additional ground for termination of Dedrick B.'s parental rights concerning Joshua due to his failure to manifest an ability and willingness to personally assume legal and physical custody and financial responsibility of Joshua. Furthermore, the trial court found that Dedrick B. was not the legal father of Devunta and D'Anna and that the following grounds for termination existed, pursuant to Tennessee Code Annotated § 36-1-113(g)(9) (2017), to terminate his parental rights to these two children: (1) failure, without good cause or excuse, to make reasonable and consistent payments of child support; (2) failure, without good cause, to seek reasonable visitation with the children or engagement in only token visitation; (3) failure to manifest an ability and willingness to assume legal and physical custody of the children; (4) risk of substantial harm to the physical or psychological welfare of the children from placement in Dedrick B.'s custody; and (5) failure to file a petition to establish paternity within thirty days of notice of alleged paternity. Upon finding by clear and convincing evidence that termination of Dedrick B.'s parental rights was in the best interest of Devunta, Joshua, and D'Anna, the trial court terminated his parental rights to those three children.

The trial court also terminated Lamarcus G.'s parental rights to Marneasha upon a determination by clear and convincing evidence that Lamarcus G. had abandoned the child by his actions exhibiting wanton disregard for the child's welfare, willful failure to financially support the child, and willful failure to visit her. Additionally, the trial court found that Lamarcus G. was not the legal father of Marneasha and that the following termination grounds existed pursuant to Tennessee Code Annotated § 36-1-113(g)(9): (1) failure, without good cause or excuse, to make reasonable and consistent payments of child support; (2) failure, without good cause, to seek reasonable visitation with the child or engagement in only token visitation; (3) failure to manifest an ability and willingness to assume legal and physical custody of the child; (4) risk of substantial harm to the physical or psychological welfare of the child from placement in Lamarcus G.'s custody; and (5) failure to file a petition to establish paternity within thirty days of notice of alleged paternity. The trial court further found by clear and convincing evidence that termination of Lamarcus G.'s parental rights was in Marneasha's best interest. Both fathers have timely appealed.

## II. Issues Presented

Lamarcus G. and Dedrick B. have jointly presented two issues for review, which

we have restated slightly as follows:

1.    Whether the trial court erred by terminating Lamarcus G.'s and Dedrick B.'s parental rights pursuant to grounds provided in Tennessee Code Annotated § 36-1-113(g)(9).

2.    Whether the trial court made sufficient findings of fact and conclusions of law.

Lamarcus G. has also presented the following issue, which we have similarly restated slightly:

3.    Whether the trial court erred by finding clear and convincing evidence of the statutory ground of Lamarcus G.'s abandonment of Marneasha based on Lamarcus G.'s conduct exhibiting wanton disregard for the child's welfare prior to his incarceration.

DCS presented two additional issues for our review, which we have restated as follows:

4.    Whether the trial court correctly determined that statutory grounds existed to terminate Lamarcus G.'s and Dedrick B.'s respective parental rights.

5.    Whether the termination of Lamarcus G.'s and Dedrick B.'s parental rights was in the best interest of their respective children.

III.  Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *see In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). As our Supreme Court has explained:

> The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)]. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decison terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).
>
> Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

\* \* \*

> In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and

convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).

## IV. Tennessee Code Annotated § 36-1-113(k)

As a threshold issue, we first address whether the trial court made sufficient findings of fact and conclusions of law pursuant to Tennessee Code Annotated § 36-1-113(k), which provides in pertinent part:

> The court shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing.

A trial court speaks through its written orders, *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015), and the judgment entered by the trial court must be the independent judgment of the trial court, *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). *In Smith*, our Supreme Court explained the importance of the trial court's providing legal reasoning for its decision:

> The essential purposes of courts and judges are to afford litigants a public forum to air their disputes, and to adjudicate and resolve the disputes between the contending parties. To carry out these purposes, judges must arrive at their decisions by applying the relevant law to the facts of the case. <u>Because making these decisions is a "high judicial function," a court's decisions must be, and must appear to be, the result of the exercise of the trial court's own judgment</u>.

> The manner in which judges arrive at their decisions "gives formal and institutional expression to the influence of reasoned argument in human affairs." In addition to expecting judges to be "fair, impartial, and engaged," the litigants, the bench and bar, and the public expect them to explain why a particular result is correct based on the applicable legal principles.

> Providing reasons for a decision reinforces the legitimacy of the legal process which, in turn, promotes respect for the judicial system. As Judge Richard Nygaard has noted with regard to judicial opinions:

> Judicial opinions are the core work-product of judges.  They are much more than findings of fact and conclusions of law; they constitute the logical and analytical explanations of why a judge arrived at a specific decision.  They are tangible proof to the litigants that the judge actively wrestled with their claims and arguments and made a scholarly decision based on his or her own reason and logic.

*Bright v. Westmoreland Cnty.,* 380 F.3d 729, 732 (3d Cir. 2004).

\* \* \*

> [M]ost courts have approved, but not recommended, the practice of trial courts receiving and using party-prepared findings of fact, conclusions of law, and orders as long as two conditions are satisfied.  First, the findings and conclusions must accurately reflect the decision of the trial court.  Second, <u>the record must not create doubt that the decision represents the trial court's own deliberations and decision</u>.  Accordingly, reviewing courts have declined to accept findings, conclusions, or orders when the record provides no insight into the trial court's decision-making process, *Trieschmann v. Trieschmann,* 178 Wis.2d 538, 504 N.W.2d 433, 435 (Ct. App. 1993), or when the record "casts doubt" on whether the trial court "conducted its own independent review, or that the opinion is the product of its own judgment," *Bright v. Westmoreland Cnty.,* 380 F.3d at 732.

> There are, to be sure, acceptable reasons for permitting trial courts to request the preparation of proposed findings of fact, conclusions of law, and orders.  They can promote the expeditious disposition of cases, and they may, when used properly, assist the trial court in placing the litigants' factual and legal disputes in sharper focus.  In the final analysis, the ultimate concern is the fairness and independence of the trial court's judgment.

*Smith*, 439 S.W.3d at 312-13, 315-16 (footnote and other internal citations omitted) (emphasis added).

Although *Smith* involved a summary judgment case, this Court has previously applied the reasoning in *Smith* to proceedings involving the termination of parental rights. *See, e.g., In re Dakota M.*, No. E2017-01855-COA-R3-PT, 2018 WL 3022682, at \*6 (Tenn. Ct. App. June 18, 2018) ("The order terminating Father's rights does not comply with Tennessee Code Annotated section 36-1-113(k) and does not allow us to conclude that the order was the result of the court's 'own considered conclusions.'" (quoting *Smith*,

439 S.W.3d at 315)) (other internal citations omitted); *In re Colton B.*, No. M2017-00997-COA-R3-PT, 2017 WL 6550620, at *5 (Tenn. Ct. App. Dec. 22, 2017) ("Given the nearly identical recitation of facts contained in the petition and the final order, coupled with the trial court's sparse oral ruling, we must conclude that the record 'casts doubt' as to whether the trial court exercised its independent judgment in this case." (citing *Smith*, 439 S.W.3d at 316)); *In re Alleyanna S.*, No. M2015-00544-COA-R3-PT, 2016 WL 697359, at *5 (Tenn. Ct. App. Feb. 19, 2016) ("A trial court may adopt submitted findings of fact and conclusions of law as long as the adopted order reflects its own independent and deliberate decision making." (citing *Smith*, 439 S.W.3d at 315-16)).

In the present case, we note that the trial court's oral ruling was notably sparse while the trial court's written judgment was extremely detailed. Following the trial, the trial court orally ruled as follows regarding the statutory grounds and best interest:

Trial Court: The ground of abandonment by failure to support or visit has been proved by clear and convincing proof as to the parents, all three parents, abandonment by incarcerated parent as to Mr. Lamarcus G[.], substantial noncompliance with the Permanency Plan has been proved. The conditions which led to the removal of the children clearly still exist[]. The ground[] of severe abuse as to the mother has been proved. The [mental] incompetence of the mother has been proved. Failure to establish parentage on behalf of the father and failure to manifest an ability or willingness to assume custody of the children. It is clearly in the best interest of the children that termination be granted. There was one issue that was raised as to the mother's understanding on the way that the Termination of Parental Rights was read to her. In light of the proof showing her diminished capacity to understand, the Court finds that had the State read verbatim the words in the Termination form to her that it would have been meaningless to her and that the attempt to paraphrase it and give her the gist of what she needed to do; basically stay in touch, follow the requirements of the plan was an appropriate course. I'll see if the Court of Appeals agrees or not with that. I'll let the State draw your order, reasonable fee included in there to appointed counsel in each of the cases. Anything that –

- 8 -

DCS Counsel:    Your Honor, just for clarification on the Order, are you finding that [Lamarcus G.] failed to establish paternity prior to the filing of the Termination Petition as far as putative father grounds against him?

Trial Court:    Both.  If I recall, both parents -- both dads failed to establish prior to the filing.

No further findings of fact or other guidance from the trial court is contained within the appellate record that would reflect the rationale for its decision.  Counsel for DCS subsequently prepared an order, which was signed and approved by the GAL and counsel for both fathers, on October 26, 2016.  The trial court entered the order on the same date.

The trial court's oral ruling ostensibly is a recitation of the statutory grounds found by the trial court for termination of the parents' rights and a finding that termination was in the best interest of the children.  The trial court articulated that those grounds were found by clear and convincing evidence but identified no further findings of fact in support when announcing its oral ruling.  Subsequently, the trial court entered its comprehensive thirty-three-page termination judgment, including the signature lines and certificate-of-service page.  The written judgment, prepared and submitted by counsel for DCS, contained a detailed analysis, including several findings of fact regarding each ground and the best interest analysis.

The trial court may adopt findings of fact and conclusions of law prepared by a party litigant so long as (1) those findings of fact and conclusions of law accurately reflect the trial court's decision and (2) the record does not create doubt as to whether the findings and conclusions in the written order represent "the trial court's own deliberations and decision."  *Smith*, 439 S.W.3d at 315-16.  This Court has previously determined that a written order prepared by a party is sufficient when the differences between the written order and oral ruling are minor and "the record indicates that the trial court deliberated and made its own decision."  *In re Matthew T.*, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at *6 (Tenn. Ct. App. Apr. 20, 2016).

In the present case, the differences between the trial court's oral ruling and the subsequent written order are significant rather than minor.  Based upon the record before us, we cannot make a determination that the written order entered by the trial court terminating the parents' rights represents the trial court's own independent analysis and judgment and not that of counsel for DCS.  Ergo, we vacate the trial court's judgment and remand for entry of findings of fact and conclusions of law in compliance with Tennessee Code Annotated § 36-1-113(k) that reflect the trial court's independent "deliberations and decision."  *See Smith*, 439 S.W.3d at 316.  As such, all remaining issues on appeal are pretermitted as moot.

## V. Conclusion

For the foregoing reasons, we vacate the trial court's judgment and remand this matter to the trial court for further proceedings consistent with this opinion and for collection of costs assessed below. Costs on appeal are taxed to the appellee, the Tennessee Department of Children's Services.

_____
THOMAS R. FRIERSON, II, JUDGE